## Richmond

J. B. Vaughan, Et Al. *v.* Virginia Electric and Power Company.

January 18, 1971.

Record No. 7373.

Present, Snead, C.J., I'Anson, Carrico, Gordon and Harman, JJ.

*S. Page Higginbotham* (*Higginbotham & Fry*, on brief), for appellants.

*George D. Gibson* (*Evans B. Brasfield; Guy T. Tripp, III; Hunton, Williams, Gay, Powell & Gibson*, on brief), for appellee.

Carrico, J., delivered the opinion of the court.

The principal question involved in this appeal is whether the State Corporation Commission had authority to grant Virginia Electric and Power Company a license to construct a dam across the North Anna River in Louisa and Spotsylvania counties.

VEPCO filed an application praying for issuance of the license. J. B. Vaughan and various other landowners affected by the proposed construction intervened in protest against the project. After a hear-

ing, the Commission granted the license. The protesting intervenors are here on an appeal of right.

The evidence before the Commission showed, so far as is pertinent here, that VEPCO proposed to construct an electric generating station on the south shore of the reservoir to be created by the dam in question. The station would employ nuclear fuel to create steam and thereby supply the energy to rotate turbines for the production of electricity. Water from the reservoir would be used to cool the closed service system furnishing steam to the turbines. The water, which becomes heated in such a process, would then be diverted to lagoons to be cooled before being returned to the reservoir. Thus, the impounded water would be used not to rotate turbines for the production of electricity, as is true in a conventional hydroelectric plant, but for cooling purposes in the nuclear plant.

VEPCO contends that the Commission had authority to grant it a license under the provisions of Code §§ 62.1-83 and 62.1-85. Those sections provide that a license is required from the Commission before any dam may be constructed "across or in the waters of the State" or "in any rivers or streams within the State when such dam is for the purpose of generating hydroelectric energy for use or sale in public service."

The protesting intervenors contend that under the foregoing statutory language, the Commission, in this type of case, has authority to license dams for hydroelectric purposes *only* and that since VEPCO's proposal is for a project employing nuclear energy, the Commission's action in issuing the license was void. This contention, however, disregards the distinction between the terms "waters of the State" and "waters within the State" in the statutory scheme fixing the authority of the Commission.

The term "waters of the State" is defined in Code § 62.1-81 to include navigable streams and "any stream or part thereof . . . in which the construction of any dam or works as authorized by this chapter would affect the interests of interstate or foreign commerce." While the term "waters within the State" is not defined, it is obviously meant to include all streams not described as "waters of the State."

Thus, with respect to the licensing of dam projects, the legislature in the above cited Code sections has recognized two classes of waters: those "within the State" and those "of the State." As to "waters within the State," the authority of the Commission is limited to the licens-

ing of a dam for hydroelectric purposes only.[1] But as to "waters of the State," the authority of the Commission extends to the licensing of *any* dam proposed to be constructed in or across such waters regardless of the purpose for which the dam is to be used.

Therefore, since the project proposed by VEPCO would not be for hydroelectric purposes, the crucial inquiry becomes: Is it a "water of the State" that VEPCO proposes to dam in the development of its project?

The evidence before the Commission showed that the electric energy to be generated at the proposed project would flow through VEPCO's interstate transmission network. The rule is that projects generating energy for the interstate transmission of electricity affect commerce among the states. *Federal Power Commission* v. *Union Electric Co.*, 381 U.S. 90, 94 (1965). It follows that construction of the dam in and across the North Anna River would "affect the interests of interstate or foreign commerce" within the meaning of Code § 62.1-81 and constitute that stream a water "of the State" under Code § 62.1-83. These circumstances required licensing of the project pursuant to Code § 62.1-85, thus vesting authority in the Commission to grant the license in question to VEPCO.

The protesting intervenors also contend that in granting the license, the Commission should have limited what land VEPCO may take in fee in eminent domain proceedings for use in the project. It is argued that the "area around the plant site and the dam site" is all that should be taken in fee and that only an easement should be acquired "for the reservoir and the flood area and the maintenance area."

When this point was raised below, the Commission ruled that the question of the extent and nature of the interests to be acquired for the proposed project was not a proper one for its consideration. We agree. The only issue before the Commission was whether VEPCO should be licensed to construct the dam. The Commission's action in granting the license did not determine how much land and what interest therein VEPCO might acquire. Those are matters properly left for determination by the appropriate court in eminent domain proceedings.

The final order of the Commission will be affirmed.

*Affirmed.*

---

[1] In the view we take of the case, we need not consider VEPCO's alternative contention that the Commission has permissive authority under Code § 62.1-99 to license dams in "waters within the State" for other than hydroelectric purposes.